Curia, per Withers, J.
The defendants are indicted, and are convicted, by a general verdict of “guilty,” under the third and fourth sections of the Statute of 4 and 5 P. and M. ch. 8.
The motion urged before this court is that taken in arrest of judgment; that for a new trial has not been pressed.
One ground for arrest of judgment implies that the Statute upon which this prosecution is founded never had validity in this State, because it was enacted by no competent authority, and if it ever had validity it has grown obsolete.
Touching the authority that enacted the 4 and 5 Phil; and M. ch. 8, it is needful to remark only that it rests upon the same foundation which supports the whole body of British statutes imported into our code by the Act of 1712, since it appears in the schedule accompanying that Act (as other Statutes do,) by the designation of the names of those who wore the crown, the year, chapter, and title.
The conception that the Statute in question has grown obsolete, is equally untenable. Independent of the position announced by the English court, in 1788, “that an Act of Parliament cannot be repealed by non-user,” we have it demonstrated in our own reports, that 4 and 5 P. and M. ch, 8, has been administered in our courts; and, in two instances at least, has been recognized in spite of the objection now urged. The cases of Findley and O’Bannon are referred to. In the first case cited, the defendant was punished, in the other he escaped upon exceptions to the indictment, but the full force and virtue of the law was affirmed. In the MSS. December, 1829, it may be seen that Judge Johnson admits that he had entertained some of the impressions urged upon this occasion in regard to the Statute of Philip and Mary, as that it was founded upon a state of society and political relations now overthrown, and he goes so far as to say that if the question had been then res integra he would have hesitated to recognize the Statute. But he yielded implicitly to the case in 2d Bay, especially as he had been informed that it had been decided upon great and mature deliberation; had involved the very question, among others, now and then again raised, and had established the opinion of the profession in favor of the continued efficacy of the Statute. If the reasoning to the contrary, which has been submitted to us, be adopted, we should, under such a guide, make a fearful inroad upon the mass of English Statutes of force in this *8 State. It would be dangerous for a court to extinguish a Statute, whether of ancient or more modem time, upon the conceit, or the admitted fact, that much of the declared motive to its adoption, as recited in a preamble, had lost its force. No matter if it be admitted that the Statute under consideration was originally designed, as a main purpose, to protect the fortune and dignity of a class among those for whom it was provided at its origin, our ancestors perceived that there were property and dignity here also to protect, as well as the tender sympathies of the family circle, the peace of society, the happiness of parents, all as open to intrusion by every evil passion, as liable to spoliation by every mercenery, or still more odious adventurer, as the like rights and interests could be in any class or country. . Nor are we at all ashamed to add, that the reasons that should have controlled the legislation of Provincial times, equally with those that command our -respect at the present more pretending period, were as strong to lead our lawgivers to aim at the protection of the tender years of a female in a Carolina cottage, against the artful or forcible abduction of a marauder, as those which moved the British Parliament to fence around the sanctity of a palace. We may fortify our view in this particular by appealing to the two cases m our books to show that in both instances the parents of the girls abducted were poor, so that in neither case was an heiress, or one having artificial dignity, captured.
A remark should be made upon the 5th ground for arrest of judgment. It alleges that the indictment does not negative, as it should, “the exceptions contained in the Statute in regard to the taking being by the guardian in socage or chivalry.”
It is perhaps more than doubtful whether such a relation as guardian in socage, which is contemplated in the second section of the Statute, ev.er was recognized in this State. It is said to exist at common law, and arose upon descent of land, held by the tenure of common socage cast upon a minor under the age of 14, and to cease'at that age. It is true that such a guardian would seem to have been recognized in the Act of 1763, which pursued the Statute of Charles on the same subject, and which authorized the appointment of what is commonly called a testamentary guardian. But Judge Brevard, in a note to his title “Guardian and Ward,” in his Digest, expressly affirms that no guardian in socage existed here. No instance of such is known. Pie was to be next in blood to the minor who could not be also heir. I-Iow such a guardian could exist, in conformity to the objects of the common law in creating him, consistently with the operation of our Statute of distributions, cannot well be conceived. That Statute bringá into the line of succession, as heirs, every per *9 son who ought to be guardian of the infant. When primogeniture departed, if not before, it would seem reasonable conclude that guardian in socage went with it, and the departure of both was hastened by the policy that reduced the relative dignity of real estate below the English standard. It may not be inapt to observe that by Ratcliffe's case it was solemnly resolved that the violation of the custody of the fant maid contemplated by the 4th section of the Statute of P. and M. was that of the father, or a guardian by him created by deed, will, or otherwise ; or in default thereof, the custody of the mother. It may be further seen, from the same case and notes thereto, that the fourth section has been regarded as extending to any damsel, though she be not heir or heir apparent, and though she departed with her assent after age of 12 years. ’
But if it be conceded that guardianship in socage exists, and if the indictment had been upon the second section of the Statute of P. and M. an averment in exclusion of such guardianship would include also an averment affirming no descent of lands in socage tenure, out of which the relation arises ; it would be a hard rule that should require such a negation on the part of the prosecution, while if the matter could be made available for the defence, it would throw no undue burthen on the defendants to put them to plead and prove an affirmative proposition that should bring to them protection.
The indictment, however, is founded on the third and fourth sections of the Statute. The third section exempts from conviction “such of whom such person taken away shall hold any lands or tenements by Knight’s service.” Without doubt there is no such person in this State. No such tenure as that by Knight’s service ever did exist here, as I presume. By Act of 1712, Section 5, we find established “all and every part of the common law of England, where the same is not altered by the above enumerated Acts, or inconsistent with the particular constitutions, customs and laws of this Province, excepting so much thereof as hath relation to the ancient tenures which are taken away by the Act of Parliament made in the 12th year of King Charles the 2d, ch. 24, entitled An Act for taking away the Court of Wards and Liveries, and tenures in capite, and by Knight’s service and purveyance,” &c., and the enactment proceeds to declare that all tenures are converted into that of free and common socage.
By the 4th clause, the marriage of the maid abducted is made punishable “ except such contracts of matrimony as shall be made by the consent of such person or persons as by the title of wardship shall then have or be entitled to have the marriage of such maid or woman-child.” Who can designate such a person as he who is thus described ? *10 if there be any person in this State who has a legal right to marry a girl “ by title of Wardship,” we know him not.
There being no such tenure or Lord of the fee, as is described in the 3d section, nor any such person as he who is referred to in the 4th section, known to our law, and these two descriptions of persons being those only who are exempt from liability to the Statute, or whose consent could exempt another; and inasmuch as it is incontrovertible that cause for arresting judgment must arise on the face of the pleadings, the case stands, as to the point now in view, as if no exception or exemption whatever appeared in the Statute • since the law, in its progress, has exterminated the cases of exemption originally named.
These remarks supercede the occasion of considering whether, even allowing we had characters of persons fulfilling the defined exceptions at this day, it would be necessary to exclude them by negative averments in the indictment. Such an inquiry might involve no little labor, and produce qnsatisfactory results — though, even in that case we should have to guide us the following doctrine from Lord Hale. “When an offence is made felony, or otherwise punishable by Act of Parliament, though the indictment must take in the circumstances which, in the body of the Act, make up the offence — yet if, by proviso in the same Statute or any subsequent Statute, some cases or circumstances are exempted out of the Act, the indictment need not mention or qualify the offence, so as to exempt it out of the proviso, but the party shall have advantage of the'proviso, by pleading not guilty,” <fcc. ■
The ground of appeal supposed to be best conceived is the 6th, to wit.
“ Because there are two different offences charged in the indictment and particular counts thereof, distinct in their nature, and admitting of different degrees of punishment, and a general verdict of guilty, does not shew of which offence the defendants were guilty.”
We do not hold that the.offences charged are “distinct in their nature.” The offences are, in kind, the same; and that imputed upon the foundation of the 4th section, necessarily includes that which is founded upon the 3d. If the offences be really distinct, then, on the general rule, they could not be charged in the same count. Yet they are, in the present case, so charged in' the last count. Still we hear no objection' for duplicity. If we did meet that objection, we could oppose to it the law of Burglary, where a larceny is charged with the breaking and entering, as, in fact, pait and parcel of the offence, since the intent to commit a felony enters into it, and is well alleged by charging the actual commission of it.
*11 By the third section, a penalty of imprisonment for two whole years, without bail or mainprize, or else a fine the discretion of the Council of the Queen in the Star Chamber, is imposed upon any person, over 14 years of age, who shall “unlawfully take or convey, or cause to be taken or conveyed, any maid or woman-child unmarried, being within the age of 16 years, out'of or from the possession and against the will of the father or mother of such child,” or other person who may have, lawfully, by any means, the order, keeping, education or government of such child.
By the fourth section, it is provided that imprisonment of five years or fine at discretion, assessed as aforesaid, shall be imposed upon any person over 14, who shall “ so take away or cause to be taken away, as is aforesaid, and deflower any such maid,” &c. or who shall (against the will or knowledge of her father, if alive, or her mother, if he be dead, having the custody or governance of her,) “ by secret messages or otherwise, contract matrimony with such maid or woman.”
Let it be remembered, that the motion is in arrest of judgment ; and it is familiar that this exception must arise from the record. Now, there will be no doubt that a count for a common assault may be joined with another for an assault and battery; and with a third, for assault and battery with aggravation stated. Nobody would conceive that a motion in arrest of judgment could be sustained against such an indictment, upon a general verdict of guilty. The one before us does not differ from that in its nature. On a general verdict of guilty, it might be urged that there existed uncertainly, in the case supposed, whether the jury found for the assault, or for the assault and battery, or for the aggravated assault and battery. The punishment, though discretionary, would vary, as the conviction might be referred to the one or other degree of the offence. Even if it be supposed that a new trial would be granted to ascertain the fact, certainly there would be no cause to arrest the judgment.
A good illustration may be derived from the case of The King v. Johnson,“ where exception was taken, by way of motion in arrest of judgment, to an indictment and general verdict of guilty, where counts for embezzling bank notes, the property of rhe Trustees of the Liverpool docks, by Johnson, their clerk, were joined with counts for larceny in the common form; the punishment, under the Act of 39 Geo. 3, for the embezzlement being different from that appropriate to the larceny as at common law. The motion was refused— and from the opinions of the Judges pronounced seriatim, the rule may be deduced, that if the offences are primarily liable to the same punishment, the joinder of such is not legally objectionable, notwithstanding they may, under circum *12 stances, be amenable each to a different punishment; since (then, they are offences of the same nature.
In the case of King v. Bierfieid & Sanders, the defendants were convicted on the fourth count in the indictment, which charged the singing of two libellous songs on two persons. Among the grounds for arrest of judgment, it was urged that one of the songs was not libellous, and it could not be known that the verdict of the jury did not apply to that. It was resolved, however, that the song was libellous, but if not, yet if either of the two were so, the judgment would be good, for, in indictments, the Court will give judgment on that which is indictable. It is not like the case of an action where general damages are given on good and bad counts, in which case the plaintiff cannot have judgment since the damages are entire, and the Court cannot apportion them. It was thought, however, that such reason did not hold good in indictments.
In the case of The King v. Young and others, Buffer, J. observed that the case last above cited showed that it is no objection to an indictment that it contains several charges. He proceeds: — <! The case of felonies admits of a different consideration, but even in such a case, it is no objection in this stage of the prosecution. On the face of the indictment, every count purports to be fór a different offence, and is charged at different times ; and it does not appear on the record, whether the offences are or are not distinct. But if it appear, before the defendant has pleaded or the jury are charged, that he is to be tried for separate offences, it has been the practice of the Judges to quash the indictment, lest it should confound the prisoner in his defence, or prejudice him in his challenge of the jury; for he might object to a juryman’s trying one of the offences, though he might have no reason to do so in the other.
“ But these are only matters of prudence and discretion. If the judge who tries the prisoner does not discover it in time, I think he may put the prosecutor to make his election on which charge he will proceed.” “ But if^ the case has gone to the length of a verdict, I think it is no objection in arrest of judgment. If it were, it would overturn every indictment that contains several counts.”
It is laid down in Chitty C. L. vol. 1, 255, thus: — “ Stiff, however, it is no objection to an indictment that the punishment for one of the offences is positive, and the other discretionary, and after a general verdict, the objection of misjoin-der may be avoided by entering up judgment on a particular-count;” and for this, Rex v. Darley is cited. In that case, the defendant was indicted for assaulting another on account of money won at play, which was punishable, very severely, -under Stat. 9 Anne, ch. 14; and, also, for an assault and bat *13 tery at common law. The motion in arrest was abandoned, when Heath, J. who tried the case, was asked how he put it, to the jury, and answered, “that he had directed the jury to acquit the defendant on the first and second counts, if not clearly satisfied that he had assaulted the prosecutor on account of the money won at play; .and he had distinctly left it to them to decide, whether the assault -were on that account, or on account of the abusive language then used; and if they were of opinion it was on the latter count, they should acquit the defendant on those counts.”
The defendant was sentenced under the Statute, which inflicted no less a penalty than forfeiture of personal estate and imprisonment two years.
In the case of The Commonwealth v. Carlton, a general verdict of guilty was rendered against the defendant, who was charged in'two counts — in the first, with an offence (enr tering a dwelling-house without breaking) punishable under Statute, by imprisonment in the State Prison, not more than five years; and in the second, with grand Larceny, in stealing a clock, which was subjected to the same description, but a less degree, of punishment. The defendant was sentenced on the first count, to the full penalty provided, and on the second, to one day’s imprisonment. A motion in arrest -of judgment was refused. The Court held it right and usual, to include in the same indictmept several distinct substantive offences, where they are of the same general nature, and where the mode of trial and the nature of the punishment are the same ; that separate sentences need not, in such case, be passed, where the whole of the judgment but the sum of the several sentences to which the convict is liable. ‘ .
This case goes, perhaps, .somewhat beyond that from 4 East, 179, which latter, never shaken, so far as any English case has been found, is a full warrant at least for the doctrine, that in such a case as the one now before us, charging an offence of the same general nature, in two counts, where the aggravation, as disclosed in one count, increases the penalty, and that one embracing the other, the general verdict shall be taken to have found the highest grade of guilt; and, at any rate, no inconvenience, as to adjusting, the punishment, shall be allowed to'work an arrest of judgment. If a state of things should appear, (as in the case of the State v. Anderson,) where' the single act proved might be referred to a count, defective, charging an offence under a distinct' Statute, and attended by a specific measure of punishment, or to a count, good in form, charging an offence under,a different Statute, as committed by a person bearing a peculiar character, and attended by a different measure of penalty — ■ we might and would, as was done in the case cited, order a *14 new trial, that we might know whether the jury found the party guilty of the offence well charged, or of that ill-charged ; whether they found him fulfilling the character imputed in the good count, (without which he would not be guilty) or only that imputed in the bad count, upon which he could not be punished, because of its defective construction.
No such difficulty exists in the present case. Looking to .what passed at the .trial, as was done in the case.of the King v. Darley, the manner in which the case was put to the jury, we. can have no doubt but'that the parties convicted were guilty, and so found on abundant evidence, not merely of what was charged under the-3d section of the Statute of P. & M. but also of what was charged under the 4th section of the same Act, which last necessarily includes the first. We are not without' support in the view that the verdict in this case finds the party guilty of the higher grade of guilt, by the -authority of Chief Justice Tilghinson (who spoke for the whole court) in the case of Harmon. Harmon was charged in one count with. Rape, and in another, with assault and batteiy, with intent to ravish. The verdict was guilty generally. The objection -urged here was taken there. The punishment in -the Pennsylvania case of the several offences, was different in degree, though of the same nature, precisely as in the, present, case. At one time, the punishment for Rape was death in Pennsylvania. It had been mitigated to confinement-in the Penitentiary.. Judgment was given against Harmon for Rape. It was well said in^ that case, that whatever might have been; the force of the objection when rape was capitally punished, it. was greatly weakened since that offence and the assault with intent to commit it, were punished by a penalty of the same nature. There could be no surprise on defendant, nor difficulty in making his defence. If guilty of the rápe, he must have-been also of the assault with intent to ravish, for if not guilty of .the latter, he could not have been,of the .former; -so that when he prepared for defence against one, he necessarily.was equally prepared as to the other. It was thought unjust, however, to punish him for both, for ’the less was merged in the greater degree of offence. The rule of the English practice was approved, to wit, in cases of joinder of counts likely to confound or embarrass the. defence, the State should be put to election, or the indictment be quashed.
■Whether the defendants, Tidwell and Lawhorn, are both punishable to the same extent, both háving been equally guilty in the abduction, and one only having contracted marriage, is a question which has been considered by the Court, though not raised in the appeal. We hold-them liable to aii equal penalty, notwithstanding-the use of the singular number in the 4th section of the Statute of Philip & Mary; and *15 notwithstanding Lawhorn did not marry the girl, whom, however, he “caused” to be taken away and married Tidwell. In the King v. Pierson, Lord Ossulstone and others, Lord Ossulstone played the part of Lawhorn in this case, and Pierson that of Tidwell. Each was punished to the same extent. East, in Pleas of the Crown, observes, speaking of the Statute of P. <fc M. “and if the principal offender in such case, were within the Act, it must follow that all who combine with him for the same purpose, are equally guilty.”
_ _ The motions are dismissed.
Evans, Wardlaw and Frost, JJ. concurred.

Motion refused.